UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

VINCENT CARLSON, *et al.*,

          Plaintiffs,

v.

LEPRINO FOODS CO.,

          Defendant.
_____/

Case No. 1:05-CV-798

Hon. Richard Alan Enslen

**<u>OPINION</u>**

       This matter is before the Court on Plaintiffs Vincent Carlson, *et al.*'s Motion to Proceed as a Collective Action.  The Motion has been regularly briefed, plus supplemental briefing, such that the Court does not require oral argument to decide the Motion.  For the reasons which follow, the Motion will be granted in part and denied in part.

       **<u>FACTUAL BACKGROUND</u>**

       This suit was filed on November 29, 2005 and asserts claims under the Fair Labor Standards Act of 1938 ("FLSA"), as amended, 29 U.S.C. § 216(b).  (Compl. ¶ 2.)  More particularly, Plaintiffs allege that they were employed as hourly production workers for Defendant Leprino Foods Co. and Defendant failed to pay them compensation for hours worked, and especially failed to pay them for hours worked donning and doffing protective clothing and walking between their dressing areas and their individual work sites.  (*Id.* ¶¶ 8-11.)  The Complaint requests unpaid FLSA wages beginning three years from the Complaint's filing date through the resolution of the suit. (*Id.* ¶ 1.)   Plaintiffs have brought this action with their request to maintain it as a "collective action" under 29 U.S.C. § 216(b).  (*Id.* ¶ 24 & *ad damnum* clause.)  Plaintiffs allege that "Plaintiffs and Collective Plaintiffs

are similarly situated, have substantially similar job requirements and pay provisions, and are subject to Defendant's common practice and policy of refusing to pay wages for time spent donning and doffing work clothes and walking to and from the locker room . . . ." (*Id.* ¶ 23.)   Plaintiffs further maintain that the claims of Collective Plaintiffs are "essentially the same." (*Id.* ¶ 24.)   Plaintiffs request that the Court authorize the Collective Action nationally (as to all plants operated by Defendant in the United States) and send a notice to eligible claimants of their right to "opt in" the suit pursuant to 29 U.S.C. § 216(b).   (*Id.*)

Plaintiffs have proposed a class notice which describes the eligible class members as:

All hourly employees of Leprino who, as part of their duties for Leprino were, required by Leprino to put on and take off protective clothing in the regular course of employment.

(Mot., Pls.' Br., Ex. 3 at 2.)  The proposed notice further limits the definition to those members who did not receive compensation from Leprino for time spent putting on and taking off required protective clothing and walking to and from a dressing area and work station.  (*Id.*)  The proposed notice also excludes any person who is covered by a collective bargaining agreement with Leprino regarding which the agreement states that the workers will not be compensated for dressing and walking time.  (*Id.*)

In its supporting Brief, Plaintiffs identified Leprino's United States' plants as situated at: 1. Allendale, Michigan; 2. Remus, Michigan; 3. Lemore (East), California; 4. Lemore (West), California; 5. Tracy, California; 6. Fort Morgan, Colorado; 7. Ravenna, Nebraska; 8. Roswell, New Mexico; and 9. Waverly, New York. (Pls.' Br., Ex. 1.) (Defendant also has foreign plants in Ireland and Wales, which are not pertinent to the suit, though wonderful travel destinations.) (*Id.*)  Plaintiff Vincent Carlson has also filed his Affidavit which attests that: he was an hourly employee of

2

Defendant between 1996 and June 2005 (Carlson Aff., Pls.' Br., Ex. 2 ¶ 3); he was required to wear protective gear (shirt, pants, boots, hairnet, beard-net, ear plugs and gloves) as a condition for his employment (*id.* at ¶¶ 10-11); the time typically spent donning, doffing and walking to and from the work site and dressing room was 15-20 minutes (*id.* at ¶ 14); this time was uncompensated (*id.* at ¶ 12); and it was a policy or general practice of the company to not compensate the time (*id.* at ¶ 5.)

This Complaint named two Plaintiffs–Carlson and Albert Monteil. Other Plaintiffs have since filed "opt in" notices–Patrick Doyle (Dkt. No. 14); James Zynda (Dkt. No. 15); Nedzad Muratbegovic (Dkt. No. 20); Milanka Muratbegovic (Dkt. No. 21); and Jeremiah Rimbey (Dkt. No. 45). It appears that all such persons were/are employed at the Allendale plant.

Defendant's filings deny the existence of any company-wide policy. (*See* Vance Decl., Def.'s Resp., Ex. J ¶ 5.) Defendant has employed, in the last three years, over 1,400 hourly workers at the nine plants listed above. (*Id.* ¶ 3.) According to Defendant, each of those plants have several departments: cheese production, cheese processing, whey, maintenance, quality control, warehouse, administration and human resources. (Def.'s Resp. 3.) Employees, regardless of department, are required to wear a simple uniform consisting of shirt, pants and boots. (Vance Decl., Def.'s Resp., Ex. J ¶ 4.) Employees in production and processing also are required to wear hairnets, beard-nets, bump caps, and sometimes earplugs and safety goggles (the latter depending on the location of their workstations). (*Id.*; Schmidt Decl., Def.'s Resp., Ex. H ¶ 4.) According to Defendant, neither Carlson nor the other consenting Plaintiffs have personal knowledge of facilities other than the Allendale plant because their work activities were limited to the Allendale plant. (Houser Decl., Def.'s Resp., Ex. D ¶¶ 22-24.)

Defendant does give examples of differences between some of the various plants. Defendant explains that as to the Ravenna, Nebraska plant, due to old custom, each of the employees were paid for 10 minutes of changing time in addition to their clocked time. (Vance Decl., Def.'s Resp., Ex. J ¶ 6; Schmidt Decl., Def.'s Resp., Ex. H ¶ 6.) Roswell, New Mexico, on the other hand, required all of its employees to dress in their uniforms by their scheduled start times without compensation. (Schmidt Decl., Def.'s Resp., Ex. H ¶ 11.) Allendale in 2001 required some, but not all, employees to sometimes attend pre-shift meetings and compensated the attending employees for five minutes of changing time in connection with those pre-shift meetings, but did not otherwise compensate employees for donning and doffing; that policy expressly excluded any time for changing clothes at the end of a shift. (*See* Housler Decl., Def.'s Resp., Ex. D ¶¶ 9, 10 and tab 1.)

In 2005, due to the United States Department of Labor ("DOL") investigation, the policy at the Allendale plant was changed to provide that dressing time was to be clocked, though there is some evidence that the new policy has either not been followed, or the policy has utilized inadequate benchmarks for changing. (Doyle Dep, Pls.' Reply, Ex. 3 at 22-25.) New policies were also implemented in 2005 at other plants which set a compensation benchmark (10 minutes per shift) for changing time at such plants–the Roswell, Lemore West and Fort Morgan plants. (Pls.' Reply, Exs. 23 & 24, L00473-474, L00485.) Notwithstanding, Plaintiffs have offered some evidence that the time credit is inadequate because changing/walking times exceed the allotment as to such plants. (*See* Doyle Dep., Pls.' Reply, Ex. 3 at 25.)

Additionally, three of the plants–Lemore East, Tracy and Remus–are unionized and the employer views the changing time issue as to those plants as part of the collective bargaining and thus exempt under FLSA. (*See* Vance Decl., Def.'s Resp., Ex. J ¶ 7.) Regarding the Tracy plant,

4

a collective bargaining agreement was reached in 2002 which includes terms exchanging extra break time (10 minutes) for non-payment of donning and doffing time.  (Klein Decl., Def.'s Resp., Ex. F ¶ 4.)  The Lemore East and Remus plants are somewhat different in that the terms of the old collective bargaining agreements, which did not afford pay for dressing time, were simply a matter of historical practice as oppose to a specific bargained exchange.  (*See* Frankenhouse Decl., Def.'s Resp., Ex. B ¶ 3; Vance Decl., Def.'s Resp., Ex. J ¶ 7; Schmidt Decl., Def.'s Resp., Ex. H ¶ 13.)  In 2005, an new collective bargaining agreement was approved as to the Remus plant under which all employees would don and doff clothing while on the clock. (Schmidt Decl., Ex. H ¶ 13.)

Another important circumstance to this case is the DOL's 2005 enforcement action as to the Allendale plant.  In that enforcement action, the DOL surveyed hourly workers who worked more than 40 hours per week and determined that 100 percent of surveyed respondents believed that they were required to change off the clock.  (Pls.' Reply, Ex. 12, L00193.)  One of the reasons for this uniformity, in addition to memoranda confirming a plant-wide policy, is the location of the time clocks--which are located not in the dressing rooms, but in the hallways leading to the employees' departments.  (*See* Housler Decl., Def.'s Resp., Ex. D ¶ 8.) Another reason for the uniformity is that supervisors at the plant changed time cards to make sure that employees were not compensated for donning and doffing clothes.  (Hollenbeck Aff., Pls.' Reply, Ex. 22 ¶ 5.)

DOL's 2005 enforcement action resulted in Defendant offering reimbursement for unpaid FLSA wages to 134 employees at its Allendale plant.  (*Id.* ¶ 15.)  The employees offered the settlement were those that averaged over 40 hours a week for the survey period; some 90 other employees who averaged fewer hours per week were not offered the settlement.  (*Id.*)  The settlement was for back wages between March 22, 2003 and March 19, 2005.  (*Id.* ¶ 16.)  Some of the 90

workers who did not receive settlement offers did, on occasion, work more than 40 hours per pay period, but were not offered settlements because of their lower averages.  For instance, Plaintiff Albert Monteil worked some eight weeks in which his clocked hours exceeded 40 hours but was not offered settlement for those weeks.[1]  (*See id.* ¶ 23.)

One hundred twenty of the 134 employees participated in the settlement and executed release forms as to the pertinent back-pay time periods.  (*Id.* ¶¶ 16, 19 & tab 2.)  Nine of those employees could not be reached by their listed addresses.  (*Id.* ¶ 19.)  The other five did not respond to the offers, and the checks sent with the offers have been since had their payment stopped.  (*Id.*)  It does not appear that the DOL action resulted in any injunctive relief affecting the Allendale plant's operations, though in 2005 the Allendale plant implemented a payment policy effective June 2005 which purported to provide compensation for changing time.  (Doyle Dep., Pls.' Reply, Ex. 3 at 22-24.)  New "plant-wide" policies were also implemented as to the Roswell, Lemore West and Fort Morgan plants. (Pls.' Exs. 23 & 24, L00473-474 & L00485.)

## LEGAL STANDARDS

This is a request for approval of a collective action pursuant to 29 U.S.C. § 216(b). The statute provides in pertinent part that:

> . . . An action to recover the liability prescribed [for unpaid FLSA wages] may be maintained against any employer . . . in any Federal or State court of competent jurisdiction by any one or more employees for and [on] behalf of himself or themselves and other employees similarly situated.  No employee shall be a party plaintiff to any such action unless he gives

---

[1]In addition to those eight weeks, Monteil would also technically be entitled to time and a half wages for "excess hours" concerning weeks in which he clocked less than 40 hours provided that the total of the clocked hours plus uncompensated changing/walking time exceeded 40 hours per week.  The DOL apparently did not obtain compensation for such persons as part of the settlement, though it remains an option in this suit.

his consent in writing to become such a party and such consent is filed in the court in which such action is brought. . . .

29 U.S.C. § 216(b). As can be discerned by the statutory language, the statute authorizes a particular kind of collective action, one utilizing an "opt in" procedure, which the statutory language makes distinct from a class action under Federal Rule of Civil Procedure 23.

Navigating the FLSA case law is an uncertain task because the Sixth Circuit has failed to publish on the subject of proper certification procedures for a FLSA action, and other courts use a variety of different approaches and procedures. Notwithstanding, it does appear from an overview of the case law that the predominant approach is now the two-stage, "*ad hoc*" approach approved by the Tenth Circuit Court of Appeals in *Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1105 (10th Cir. 2001),[2] the Fifth Circuit in *Mooney v. Aramco Servs. Co.,* 54 F.3d 1207, 1213-14 (5th Cir. 1995), the Eleventh Circuit in *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1219 (11th Cir. 2001), and the Eastern District of Michigan in *Olivo v. GMAC Mortg. Corp.*, 374 F. Supp. 2d 545, 547-49 (E.D. Mich. 2004). The *Olivo* Court provided a good statement of the authorization procedure:

> In order to proceed as a "collective action" pursuant to § 216(b), Plaintiffs must demonstrate that they are "similarly situated" to the employees they seek to notify of this suit. In order to determine whether the Plaintiff has made this showing, the Court adopts the "two-stage class certification method." . . .
>
> Under the first step of the two-stage method, the Court determines whether Plaintiffs have demonstrated other "similarly situated" putative plaintiffs for "notice" purposes. With this

---

[2]The Tenth Circuit has also applied a "two-stage" procedure for trial in which the first stage is devoted to a determination of whether the moving plaintiffs are "similarly situated" in that there is some policy or practice violating FLSA which is generally applicable to workers; if the policy or practice is proven then at a second stage an individual claimant is afforded a presumption of injury. *See Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1106 (10th Cir. 2001).

step, "[a] named plaintiff can show that the potential claimants are similarly situated 'by making a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law.' " . . . . This initial standard is fairly lenient, and in order to meet this standard, Plaintiffs must simply "submit evidence establishing at least a colorable basis for their claim that a class of 'similarly situated' plaintiffs exists.". . . . Courts requiring a factual showing under the first step of a *Lusardi*-type determination have considered "factors such as whether potential plaintiffs were identified; whether affidavits of potential plaintiffs were submitted; ⋯ whether evidence of a widespread discriminatory plan was submitted[,]". . . , and whether "[a]s a matter of sound case management, ⋯ a manageable class exists." . . . . If Plaintiffs are able to make this showing, the Court will authorize Plaintiffs to proceed with this action as a "collective action" and will allow Plaintiffs to notify putative class members of the pendency of this suit. This initial authorization has been called a "conditional certification" a certification conditioned upon Plaintiffs being able to satisfy the second step of the two-stage approach.

*Olivo*, 374 F. Supp. 2d at 547-49 (citation and footnotes omitted).

**LEGAL ANALYSIS**

To begin, this suit follows in the wake of the United States Supreme Court's decision in 2005 which held that FLSA and section 4(a)(1) of the Portal-to-Portal Act, 29 U.S.C. § 254(a)(1), requires employers to pay employees who dress in required uniforms in the workplace for changing time and time spent walking between company locker rooms and individual work sites. *See IBP, Inc. v. Alvarez*, 126 S. Ct. 514, 523 (U.S. 2005). Given the requirements of FLSA, an employer will seldom have defenses applicable to an employee who either works overtime and/or is paid close to minimum wage to the extent that the employee is uncompensated for required donning and doffing of company uniforms when performed in the workplace.

With this said, this matter is now before the Court not for a determination of liability, but to determine whether and to what extent to authorize this collective action under section 216(b). Every now and then it makes sense to take in a panoramic view of a litigation before deciding how it can or should move forward. This is exactly such an instance because the *Olivo* standards ask this Court

to assess whether maintenance of a national class action would constitute a sound case management decision. Plaintiffs are seeking in this action to authorize a collective action as to nine separate plants which (the record clearly shows) employed more than nine separate and distinct policies as to the payment or non-payment of dressing workers during the pertinent three-year limitation period.[3] If the Court were to authorize suit as to the multiple plants and multiple policies, then a jury later seeking to ascertain whether there was an unlawful policy affecting the workplace would be confronted with nine work places, nine organization structures and more than nine policies, because the policies changed during the limitations period, and would be rightly confused in answering the simple question of whether "the policy" was in compliance with FLSA.

Rather, the factual differences between the respective plants are so significant that they appropriately warrant trials in separate fora dedicated to their own specific policies, plant organizations, time card systems, and the like. Justice will not be served by forcing multiple distinct factual scenarios onto a Procrustean Bed which aspires to a single plan or policy. *Cf. Ascensio v. Tyson Foods, Inc.*, 130 F. Supp. 2d 660, 663 (E.D. Pa. 2001) (collective action proper as to FLSA claims at a single plant location). For these reasons, the Court declines to authorize notice nationally.

However, there is loud and clear evidence supporting the approval of this action as to the Allendale plant. The DOL found that 100 percent of the surveyed workers believed there to be a general policy preventing clocked time to be compensated at the Allendale plant. This is extremely

---

[3]The Court recognizes that the three-year limitation period is applicable only to claims of wilful violations, and the two-year limitation period is otherwise applicable. The record is sufficient at this preliminary stage to allow wilful and non-wilful claims against Defendant to proceed as to the Allendale plant.

persuasive evidence of such a policy, together with the evidence that time cards were changed by the employer to prevent the payment of dressing time.  Also, company memoranda support that the institution of changing payment practices as to the plant was done on a "plant-wide" basis.  This is more than enough uniformity in policy and circumstance to support a collective action under section 216(b), particularly at the notice stage of these proceedings.

There are, to be sure, certain factual circumstances which will differ amongst class plaintiffs at the Allendale plant. Some class plaintiffs will have signed the DOL release and others will have not.[4]  Some employees will have claims for "minimum wages" under section 206[5] (29 U.S.C. § 206), while others will have claims for unpaid overtime compensation under section 207 (29 U.S.C. § 207).[6]  These are the kinds of differences, though, which are manageable in terms of the expected

---

[4]The DOL release only covers a particular time period (March 22, 2003 to March 19, 2005) and if the Patrick Doyle deposition testimony is accurate, the employer was still following its old policies which created liability until June 2005 (leaving at least a two-month gap). Further, to the extent that the new policy promoted employees not clocking in for changing times (as suggested by the Doyle testimony) or relied upon compensation benchmarks (such as the 10 minutes per shift policy used at the Roswell plant), those policies still may afford potential liability to the extent that the policy does not afford "reasonable [time to change] in relation to the actual time required to perform such activities . . ." and depending on whether "a majority of the employees usually perform the activities within the given time."  U.S. Dep‚t of Labor, *Field Operations Handbook*, § 31b01a. *See also Myers v. The Copper Cellar Corp.*, 192 F.2d 546, 554 (6th Cir. 1999) (approving application of Field Operations standards).  Finally, to the extent that there is evidence of a "wilful violation," which is plausible, then this may create liability pre-dating the release period since the three years would run from this suit's filing on November 29, 2005.

[5]The Court would expect this group of claimants to be a small one since it would be limited to workers paid close to minimum wage such that their average hourly wage, when the unpaid time is computed in the average, becomes less than minimum wage and a violation of section 206.  *See Hensley v. MacMillan Bloedel Containers, Inc.*, 786 F.2d 353, 357 (8th Cir. 1986).

[6]It appears that some, perhaps many, of the 90 workers who were left off the DOL settlement did work at least some weeks exceeding 40 hours, as to which they would have a right

10

trial process, including the use of detailed jury instructions as to damages and claims, and the appointment of distinct classes and subclasses, if necessary.[7]  Similarly, differences in any "defenses" which might arise as to the Allendale Plaintiffs are insufficient to defeat approval of the collective action as to the Allendale plant, particularly at this early stage of the litigation.

**NOTICE**

Defendant has criticized the form notice suggested by Plaintiffs.  (*See* Def.'s Resp. 25 & n.20.)  The Court will not approve the form notice presented by Plaintiffs.  (Pls.' Br., Ex. 3.)  Such notice is obviously improper in terms of its content because it is worded as to a national action affecting all of Defendant's U.S. plants.  Rather, the Court will refer the matter of notice to the collaborative efforts of the parties under the supervision of the assigned magistrate judge.  It is the Court's expectation that the parties, with the assistance and direction of the assigned magistrate judge, shall promptly confer, amend the notice language, and determine any other appropriate procedures and deadlines concerning the noticing process.

**CONCLUSION**

An Order shall enter granting in part and denying in part Plaintiffs' Motion to Proceed as a Collective Action, and further directing the parties as stated in this Opinion.

DATED in Kalamazoo, MI:
    June 30, 2006

/s/ Richard Alan Enslen
RICHARD ALAN ENSLEN
SENIOR UNITED STATES DISTRICT JUDGE

---

to overtime compensation.  *See, e.g., supra*, discussion of Plaintiff Monteil.

[7]The Court has considered the possibility of employing separate classes and subclasses as to a national action, but has determined that such a suit would be entirely unwieldy in terms of the number of distinct classes and the distinctiveness of the factual scenarios involved–which would make such an approach a blue print for jury confusion.

11